**DENNING, Plaintiff-Appellee, v. DENNING, Defendant-Appellant.**

Ohio Appeals, Second District, Montgomery County.

No. 2304. Decided April 20, 1955.

Nolan, Boesch & Wolff, Charles H. Boesch, of Counsel, Dayton, for plaintiff-appellee.

Canny, Stewart & Cromer, Hon. Clarence J. Stewart, of Counsel, Dayton, for defendant-appellant.

## OPINION

By MILLER, Presiding Judge:

This is a law appeal from the judgment of the Common Pleas Court decreeing the plaintiff-appellee a divorce, awarding custody of the child and ordering a division of property.

The record reveals that the action was based upon the grounds of extreme cruelty, which was denied generally by the defendant-appellant, who also filed a cross-petition charging the plaintiff with extreme cruelty and gross neglect of duty. She prayed only for an award of alimony and support money for the child.

The errors assigned are as follows:

(1) The judgment and decision of the trial court is manifestly against the weight of the evidence.

(2) The testimony shows clearly that the plaintiff cohabited with the defendant during the pendency of this case and condoned any alleged abuses claimed by the plaintiff in his petition.

In considering the first assigned error we find the record reveals that the principal source of the differences between the parties arises out of the fact the defendant's invalid mother, for the past several years, has resided in the home of the parties; that the home they occupied had only one bedroom and that the parties hereto, the mother-in-law and one child, all are required to sleep in the same room. This, we find, is a most unusual situation, but it must be noted that the mother-in-law came to their home from her place of abode in Binghamton, New York, with the consent of the plaintiff who, upon cross-examination, admitted writing a letter to his wife in which he made the following statements:

"If your mother come with you, which I hope she will, she will be comfortable and satisfied and may live for quite a while."

And again, in another letter, we find the plaintiff stated:

"If she does come here, with the air and conditions, she may regain her health and with the idea she can do anything she wants without the idea of bothering me. She is not afraid of me."

The record also reveals that upon the plaintiff's becoming dissatis-

fied with the mother-in-law arrangement, the defendant attempted to secure other members of the family to take her into their homes, but in this she was not successful. The plaintiff, therefore, helped create conditions for which the defendant was not entirely responsible.

The only other evidence tending to support the charge of extreme cruelty is the plaintiff's testimony, supported by two witnesses, that the defendant came to his place of employment several times a week, engaging in an argument with him at which time some vile and profane language was used by her. Again, it should be noted that this occurred only after the plaintiff had abandoned her and was residing in a hotel. She testified the visits were necessary in order to secure finances for living expenses. These visits were discontinued when the employer's attorney advised her by letter to remain away from the premises.

The question presented, as we see it, is, even conceding the facts to be true concerning the conduct of the defendant on the premises of the plaintiff's employer, whether such conduct constitutes "extreme cruelty." We do not think it does for the reason that it does not appear that the purpose of the visits was to annoy or harass the defendant, but they were for consultation about other matters.

In **Heim v. Heim, 35 Oh Ap 408,** the court held that "extreme cruelty" in order to be a ground for divorce must be voluntary or intentional extreme cruelty.

In **14 O. Jur., 388,** it is said:

"It is well established, however, that extreme cruelty is not confined to acts of physical violence, and that conduct of one party towards the other which wounds the feelings to such an extent as to cause an impairment of mental or physical health, although no actual physical violence is used, comes within the purview of the statute. Thus the use of profane or abusive language, or false accusations or imputations of unchastity, may, under some circumstances, constitute the offense. Also, a constant and continuous course of wrongful and oppressive conduct of one party against the other, without physical violence, may constitute extreme cruelty. In other words, acts which might not constitute extreme cruelty when their occurrence is only occasional may do so when their occurrence is continuous."

In **Buess v. Buess, 89 Oh Ap 37,** the court approved the following statement found in 27 C. J. S. 552, Section 28:

"Where, however, the conduct of a spouse is calculated permanently to destroy the peace of mind and happiness of the other so as utterly to destroy the objects of matrimony, a divorce may be granted on the ground of cruelty."

We do not think the evidence in this case discloses any calculated plan or effort on the part of the defendant to permanently destroy the peace of mind of the plaintiff or the objects of matrimony. From the evidence adduced it appears that the defendant had feelings of affection for the plaintiff after the separation, for she visited him on numerous occasions at his hotel, she says, spending the nights with him, and it is also admitted by both parties that they took a trip to Florida together. The alleged acts of misconduct, it seems to us, arose out of sudden impulses and fits of anger which were not schemed or planned.

We are, therefore, of the opinion the judgment is against the manifest weight of the evidence.

The defense of condonation alleged in the second assignment of error is not well made for the reason that the same was not made an issue in the case. Condonation is an affirmative defense which must be specially pleaded. **Winnard v. Winnard, 62 Oh Ap 351.**

The judgment will be reversed and cause remanded for further proceedings according to law.

HORNBECK and WISEMAN, JJ, concur.